United States District Court
Southern District of Texas
**ENTERED**
January 09, 2024
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JAMES SCHORSCH, JR., | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | Case No. 2:23-CV-00240 |
| | § | |
| PATTY ANDERSON, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff James Schorsch, Jr., appearing *pro se* and *in forma pauperis*, has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. § 1915A. The undersigned recommends that Plaintiff's § 1983 claim for declaratory and injunctive relief be DISMISSED with prejudice as frivolous and for failure to state a claim upon which relief may be granted. The undersigned recommends further that the dismissal of this case count as a "strike" for purposes of 28 U.S.C. § 1915(g).[1]

### A. Jurisdiction.

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

---

[1] Plaintiff is **WARNED** that if he accumulates three such strikes, he will not be allowed to proceed *in forma pauperis* in any civil action or appeal filed while he is incarcerated or detained in any facility unless he is under imminent danger of serious injury. *See* 28 U.S.C. § 1915(g).

### B. Background.

#### 1. Proceedings.

Plaintiff filed this suit, invoking sections 1981, 1983, and 1985 of Title 42, United States Code, to allege various violations of his rights.  (Doc. No. 1.)  In an effort to better understand Plaintiff's claims, the Court ordered Plaintiff to answer a questionnaire.  (Doc. No. 14.)  Plaintiff submitted his response to the questionnaire.  (Doc. No. 17.)  Except where noted, the information below is drawn from Plaintiff's complaint and questionnaire responses.

#### 2. The parties.

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ-CID).  He is housed at the McConnell Unit in Beeville, Texas. (Doc. No. 1, p. 3.)

The lead defendant named by Plaintiff in this case is Patty Anderson, whom Plaintiff alleges is the Deputy Director of "Disability Rights Texas," or "DRTx."  (Doc. No. 1, p. 3.) Plaintiff states that he sues Deputy Director Anderson in her official capacity.  (Doc. No. 17, p. 8.)  Plaintiff also sues "all named and unnamed multi-member board" members of DRTx.  (Doc. No. 1, p. 3; Doc. No. 17, p. 8.)  Collectively, these defendants are referred to in this opinion as the "DRTx Defendants."  All are sued in their official capacities.  (Doc. No. 17, p. 8.)

Plaintiff also sues Texas Governor Greg Abbott ("Governor Abbott"), in his official capacity.  (Doc. No. 17, p. 9.)

#### 3. Plaintiff's complaint.

The essence of Plaintiff's complaint is that DRTx wrongly failed to provide him with legal representation or advocacy despite his alleged multiple requests for assistance.  Plaintiff claims that DRTx's failure to provide him with these services amounted to a breach of a grant

agreement under which federal funds were allocated for services to the disabled.  He also alleges that DRTx's failure to provide the requested services violated his rights under the Americans With Disabilities Act[2] and the Rehabilitation Act.[3]

Plaintiff alleges that he suffers from a disability, namely "ulnar nerve damage to both arms and hands."  (Doc. No. 17, p. 1.)  He asserts that this constitutes a "disability" as contemplated by the Americans With Disabilities Act and the Rehabilitation Act.  *Id.* at 1-2.  He cites to testimony from another federal lawsuit he filed in which "several Defendants … testified under oath on the record that Plaintiff Schorsch was and is considered 'disabled.'"  *Id.* at 2.  In response to the Court's questionnaire, Plaintiff states that his physical impairments "substantially limit [his] major life activities as in working, lifting, safety and climbing."  *Id.*

DRTx is, according to Plaintiff, a protection and advocacy organization "for all individuals in Texas who are individuals with disabilities."  (Doc. No. 1-1, p. 1.)  The DRTx Defendants allegedly conspired with Governor Abbott to discriminate and exclude Plaintiff from participating in DRTx's services and programs provided to individuals with physical or mental disabilities.  *Id.*  Plaintiff alleges that DRTx "is under the authority of [Governor Abbott] of the State of Texas."  *Id.* at 2.

Plaintiff claims that Governor Abbott has abused his authority by conspiring with the DRTx Defendants to deny incarcerated individuals with physical disabilities.  The DRTx Defendants and Governor Abbott allegedly "filed 'written assurances'" in order to receive federal grant money under the Protection and Advocacy for Individuals with Mental Illness Act,

---

[2] *See* 42 U.S.C. § 12132.

[3] *See* 29 U.S.C. § 794.

42 U.S.C. §§ 10801 *et seq.* ("PAIMI"), the Developmental Disabilities Assistance and Bill of

Rights Act, 42 U.S.C. §§ 15001 *et seq.* (which Plaintiff refers to as the "PADD Act"), and the

Protection and Advocacy of Individual Rights Act, 29 U.S.C. § 794e (the "PAIR Act")

(collectively, the "P&A Acts").  (Doc. No. 1-1, pp. 2-4.)  Plaintiff claims that this federal grant

money allows DRTx to provide legal aid or representational services to all individuals in Texas

with disabilities, as part of a protection and advocacy, or "P&A," system.  *Id*. at 3.

Plaintiff alleges that he has been in contact with DRTx since 2018 and has made

"numerous" requests for DRTx's assistance with a lawsuit.  (Doc. No. 1-1, p. 3.)  He asserts that

he contacted DRTx "because employees of TDCJ kept moving me to segregation and violating

my medical restrictions."  (Doc. No. 17, p. 5.)  Plaintiff claims that he asked DRTx "for help as

to include/participate in the protection and advocacy, which is what DRTx does," but that

"DRTx responded back that there was nothing DRTx could do for me."  *Id.*

Plaintiff states that he had asked DRTx to "investigate and to help me with being

segregated because of my disabilities and with TDCJ violating my medical restrictions."  (Doc.

No. 17, p. 6.)  Plaintiff states that he subsequently filed a lawsuit against TDCJ in October 2019

and that he asked DRTx for the same assistance "plus for their legal assistance" in the lawsuit.

*Id.*  He claims that he continued to request this form of assistance from DRTx, to no avail, until

2023.  *Id.*[4]

In its questionnaire, the Court asked Plaintiff to identify the specific accommodations he

had requested "from each of the Defendants (Director Anderson, the DRTx Board Members, and

---

[4]  This lawsuit Plaintiff is referring to is *Schorsch v. Miller*, Southern District of Texas civil case number 2:19-CV-
00323.  That case is currently pending in this division.  The Court's records indicate that Plaintiff is represented by
appointed counsel in that case.

Governor Abbott) for each of your alleged disabilities….."  (Doc. No. 14, p. 3.)  Plaintiff replied

that he asked DRTx "for assistance of DRTx in respect to P&A services/programs."  (Doc. No.

17, p. 2.)  He explained:

> In 2018 I wrote two letters requesting for protection and advocacy pursuant to
> human and civil rights violations by TDCJ.  After October of 2019 [I] wrote one
> letter requesting assistance for people with disabilities.  2020, 2021, 2022 and
> 2023 wrote three letters per year requesting assistance of DRTx, pursuant to
> lawsuit filed in Oct. 2019 – No. 2:19-CV-00323, in respect to P&A
> services/programs, specifically, i.e., their legal aid and to be represented of my
> human and civil rights.

*Id.* at 2-3.  Plaintiff stated that DRTx's failure to provide him with the requested services

amounted to disability discrimination, because P&A organizations "have the authority to provide

legal representation and other advocacy services, under all federal and state laws, to all people

with disabilities.  …  Disability discrimination is construed when plaintiff was denied the

benefits of DRTx's services and programs."  (Doc. No. 17, p. 6) (emphasis deleted).  Plaintiff

does not allege that he directly asked Governor Abbott to do anything, but instead contends that

Governor Abbott "established, designated, organized and has authority over DRTx….."  *Id.* at 3.

Responding to the Court's questionnaire, Plaintiff stated that he believes his requested

accommodations were reasonable "because I'm entitled to them by DRTx – which is [a]

'Protection and Advocacy' – (P&A) for all individuals in Texas who are individuals with

disabilities."  (Doc. No. 17, p. 3) (emphasis deleted).

The Court also asked Plaintiff to state how he believed he had been treated differently

from others who do not have such disabilities.  (Doc. No. 14, p. 3.)  Plaintiff responded:

"Namely, excluded from services/programs not able to participate in services/programs whether

DRTx or TDCJ.  Also, for example, in TDCJ being out in segregation and treated differently

because of my disabilities."  (Doc. No. 17, p. 3.)  Asked by the Court to state how he had been

treated differently from others "because of [his] alleged disabilities (Doc. No. 14, p. 3 (emphasis in original)), Plaintiff stated:

> DRTx has treated me differently one because I'm incarcerated and two because of my disabilities by their knowledge and awareness i.e. their deliberate indifference to include or allow me to participate in their services/programs that are specifically provided for people that are disabled.

(Doc. No. 17, p. 3.)

### 4. Plaintiff's legal claims.

Plaintiff cites 15 different legal authorities that allegedly entitle him to relief.  (Doc. No. 1, p. 8.)  Several of these cited authorities are, through the undersigned's screening, revealed to be contained in larger statutory or regulatory schemes.  Properly grouped and summarized, the undersigned understands Plaintiff's claims to be these:

- Violation of the PAIR Act;

  - Plaintiff cites 29 U.S.C. § 794e, 42 U.S.C. §§ 10804(a)(1), 10805, and 10821, and 34 C.F.R. §§ 381.1 and 381.5(b);

- Violation of the Rehabilitation Act ("RA");

  - Plaintiff cites 29 U.S.C. §§ 794a;

- Violation of the Americans With Disabilities Act's ("ADA's") prohibition against discrimination in public services against individuals with disabilities;

  - Plaintiff cites 42 U.S.C. §§ 12102 (general ADA definitions), 12131-12134 (prohibition against discrimination);

- Violation of the ADA's prohibition against disability discrimination in public accommodations and services operated by private entities;

o Plaintiff cites 42 U.S.C. §§ 12182 (prohibition of discrimination by public accommodations) and 12183 (new construction and alterations in public accommodations and commercial facilities);

• Violation of 42 U.S.C. § 1981, guaranteeing equal rights to make and enforce contracts; and

• Violation of 42 U.S.C. § 1985(3), prohibiting conspiracy to interfere with civil rights.

(Doc. No. 1-1, p. 8.)[5]

### 5. *Plaintiff's requested relief.*

Plaintiff states that he seeks three forms of relief:

• A declaratory judgment that all of the defendants have violated Plaintiff's federal rights under the P&A Acts, the RA, and the ADA "or any other statutes" such as those listed by Plaintiff in his complaint;

• A declaratory judgment that all of the defendants "have an obligation and duty to ensure the access rights granted to Plaintiff" by the P&A Acts, the RA, and the ADA, "statutes that are fully and uniformly implemented;" and

---

[5] Plaintiff also provides additional citations to authority, *see id*, summarized here:

• 42 U.S.C. § 12202. That statute provides for abrogation of state sovereign immunity for violations of the ADA.
• 42 U.S.C. § 1983. That statute is merely a vehicle for bringing lawsuits to vindicate deprivations of other rights. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994).
• 29 C.F.R. § 1630.2(i). Plaintiff apparently attempts to provide a definition for the term "major life activities" in support of his ADA claim. The cited section, however, prescribes regulations implementing the ADA's equal employment opportunity provisions. The undersigned reads Plaintiff's citation as intending to point to the definition of "major life activities" applicable to his case: that definition is found at 28 C.F.R. § 35.108(c)(1).
• 28 C.F.R. § 35.130(b). Liberally construed, Plaintiff here is attempting to provide a definition for the term "disability."

- A permanent injunction ordering the defendants "to provide access to Plaintiff Schorsch to their services/programs" pursuant to the P&A Acts, the RA, and the ADA.

(Doc. No. 1-1, p. 9.)  Asked to specify what specific programs and services he seeks access to, Plaintiff merely repeated the request for relief in his complaint.  (Doc. No. 17, pp. 9-10.)

### C. Legal standard.

When a prisoner seeks to proceed *in forma pauperis* the Court shall evaluate the complaint and dismiss it without service of process if the Court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A; *see also* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant).  A claim is frivolous if it has no arguable basis in law or fact.  *Neitzke v. Williams,* 490 U.S. 319 (1989).  A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist."  *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998).  A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless."  *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."  *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999).  "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim."  *Id.*  Therefore, the Court "should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible

8 / 25

theory that he could prove consistent with the allegations in the complaint." *Id.* (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that the defendant is liable. *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation. *Twombly*, 550 U.S. at 555. As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed. *Id.*

Pleadings filed by *pro se* litigants like Plaintiff are construed using a less stringent standard of review. Documents filed by *pro se* litigants are to be liberally construed, and *pro se* complaints, however inartfully drafted they might be, are held to less stringent standards than formal pleadings drafted by lawyers. *See Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A plaintiff's well-pleaded factual allegations in the complaint are to be taken as true for purposes of screening, but such deference does not extend to conclusory allegations, unwarranted factual inferences, or legal conclusions. *DeMarco v. Davis*, 914 F.3d 383, 386-87 (5th Cir. 2019).

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004); *Albright*, 510 U.S. at 271. To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988). A defendant acts under color of state law if he or she misuses or abuses official power and if there is a nexus between the victim, the

improper conduct, and the defendant's performance of official duties.  *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

### D.  *Discussion.*

His asserted facts and requested relief make clear that Plaintiff sought investigative and advocacy or representational services from DRTx and that those services were wrongly denied. Plaintiff contends that he was entitled to those services because of the PAIR Act (or more generally the P&A Acts) or because of some sort of contractual obligation to provide those services based on the receipt of federal grant funds for Texas' P&A system.  Based on his discussion of the ADA and RA, the undersigned also liberally construes Plaintiff's suit as lodging § 1983 claims under those authorities because he allegedly sought a reasonable accommodation for his disability from DRTx in the form of the requested services.  Finally, because Plaintiff seeks injunctive relief, the undersigned construes Plaintiff's suit as a demand for a future reasonable accommodation of his alleged disability.  For the reasons discussed below, none of Plaintiff's claims state plausible grounds for relief; all should be dismissed.

### 1.  *The P&A Acts do not confer a private right of action.  Plaintiff's claims based on those statutes should be dismissed.*

In response to the Court's questionnaire, Plaintiff asserts that the P&A Acts are "consolidated acts which confer disability law rights."  (Doc. No. 17, p. 3.)  He lists the PAIR Act among his cited "legal claims" and states that the defendants, collectively, violated his rights with regard to each of those claims.  (Doc. No. 1-1, p. 8.)  Plaintiff also cites 34 C.F.R. § 381.1 and 381.5 among his listed authorities, apparently contending (liberally construed) that the P&A Acts confer a private right of action.  *See id.*; *see also* Doc. No. 17, pp. 3-4.[6]

---

[6]  Plaintiff's cited sections from the Code of Federal Regulations provide only a basic description of a Protection and Advocacy of Individual Rights Program (a program "designed to support a system in each State to protect the legal

The federal P&A system "relies on a state-by-state network of private agencies that receive public funds to help ensure that disabled individuals 'participate in the design of and have access to needed community services, individualized supports, and other forms of assistance that promote self-determination, independence, productivity, and integration and inclusion in all facets of community life, through culturally competent programs." *Trivette v. Tennessee Dept. of Corr.*, No. 3:20-CV-00276, 2023 WL 3635706, at *1 (M.D. Tenn. May 24, 2023) (quoting 42 U.S.C. § 15001(b)). States cannot receive federal funds for certain disability-related services unless they have established such a P&A system. *Id.* (citing *Prot. & Advoc. Sys., Inc. v. Freudenthal*, 412 F. Supp. 2d 1211, 1212 (D. Wyo. 2006); *Ala. Disabilities Advoc. Program v. J.S. Tarwater Developmental Ctr.*, 97 F.3d 492, 495 (11th Cir. 1996)).

Liberally construed, Plaintiff claims that the defendants violated the P&A Acts by failing to provide him with the investigative assistance and legal representation he allegedly requested. When relying on a statute to provide a basis for relief through § 1983, a plaintiff must show that the particular statute provides an "unambiguously conferred right" with an "unmistakable focus on the benefitted class." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 282 (2002). But the P&A Acts that Plaintiff cites do not contain any language conferring a private right of action, and courts have uniformly held that such statutes do not confer any private right of action upon individuals. *E.g.*, *Finch v. Pharr*, No. 5:17-CV-209, 2018 WL 10582181, at *6 (N.D. Tex. May 29, 2018) (collecting cases and noting that burden lies with plaintiff to establish that a statute gives rise to a right enforceable through § 1983; plaintiff failed to make such a showing with PAIMI); *accord Robinson v. Sharrieff*, No. 2:22-00806 CAS (ADS), 2023 WL 2629154, at *5-*6 (C.D. Cal. Jan.

---

and human rights of eligible individuals with disabilities") and relevant definitions for award of grant funding to operate such programs.

13, 2023) ("PAIMI does not provide for a private right of action to an individual."). Plaintiff's

claims, to the extent that he seeks to base them on the P&A Acts themselves, should be

dismissed.

For the same reason, to the extent that Plaintiff's claim could be liberally construed as

alleging that the defendants are liable to suit for breaching a "contract" to provide Plaintiff with

investigative services or legal representation, that claim too should be dismissed.  Even if the

terms of any grant of federal funding could constitute an express or implied "contract" between

and among the State of Texas, DRTx, and the federal government, the fact remains that such

"contract" arose from the alleged granting of funds pursuant to the P&A Acts, which do not

provide a private right of action.  And Plaintiff, who does not claim that he himself was a party

to any such "contract," does not plausibly allege that he has standing to sue for any breach of that

grant's (or "contract's") terms.

Plaintiff's citation to provisions in the Code of Federal Regulations[7] does not advance his

claim, either.  First, like the P&A Acts themselves, the cited provisions also do not purport to

create any privately enforceable right.  But even if they did, the P&A Acts do not, and a "federal

regulation, standing alone, 'cannot create an enforceable § 1983 interest not already implicit in

the enforcing statute.'"  *Grant v. City of Roanoke, Va.*, 265 F. Supp. 3d 654, 670 (W.D. Va.

2017) (quoting *Smith v. Kirk*, 821 F.2d 980, 984 (4th Cir. 1987)).  As the Supreme Court has

stated: "Language in a regulation may invoke a private right of action that Congress through

---

[7] *See* Doc. No. 1-1, p. 2, (citing 45 C.F.R. §§ 51 and 51.5), 3-4 (citing 45 C.F.R. Parts 1385, 1386, 1387, 1388), 4 (citing 34 C.F.R §§ 381.1 and 381.5(b)).  The undersigned observes that 45 C.F.R Parts 1385 through 1388 are currently "reserved," meaning that there are no regulations under those parts.  45 C.F.R. Part 51, meanwhile, prescribes "Criteria for Evaluating Comprehensive Plan to Reduce Reliance on Alien Physicians," and does not appear to have any relation to this case.  Plaintiff probably means Part 51 of Title 42 of the Code of Federal Regulations, which prescribes "Requirements Applicable to the Protection and Advocacy for Individuals with Mental Illness Program."  42 C.F.R. § 51.5 sets forth eligibility requirements for P&A systems to receive grant funding.

statutory text created, but it may not create a right that Congress has not." *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001).  Thus, Plaintiff's suit under § 1983 must show that a right created by Congress, rather than by any Executive Branch agency, was violated.  *Thurman v. Medical Transportation Management, Inc.*, 982 F.3d 953, 957 (5th Cir. 2020) (citing *Save Our Valley v. Sound Transit*, 335 F.3d 932, 943 (9th Cir. 2003) (plaintiff "must demonstrate that a <u>statute</u> – not a regulation – confers an individual right") (emphasis in original).  Because Plaintiff fails to demonstrate any private right of action based on the P&A Acts, his claim should be dismissed as frivolous and for failure to state a claim upon which relief may be granted.

### 2. *Plaintiff fails to state an ADA or RA claim upon which relief may be granted.*

Liberally construed, Plaintiff alleges that the defendants wrongly denied him investigative assistance and legal representation.  This, he says, amounted to a violation of his rights under the ADA and RA by all of the defendants,[8] because it amounted to disability discrimination.  Plaintiff fails to state a plausible claim under either the ADA or RA.

The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Under the RA, "[n]o qualified individual with a disability . . .  shall, solely by reason of her or his such disability, be excluded from participation in, be denied the benefits of, or be

---

[8]  Asked to specify what Governor Abbott did to deny him the requested services from DRTx, Plaintiff did not identify any specific acts, but instead replied that the governor "is personally over DRTx, as he is personally over TDCJ – because he is the Chief Executive of the State of Texas and has established, organized and has authority over DRTx, the causal connection between the plaintiff's injury, i.e., depriving of the equal protection of the laws, or equal privileges and immunities, and the connection of [Governor] Abbott absolute influence and interest – only shows of the knowledge and awareness and a based invidiously discriminating animus ...."  (Doc. No. 17, p. 9.)

subjected to discrimination under any program or activity receiving Federal financial assistance."
29 U.S.C. § 794(a).

"The RA is operationally identical to the ADA in that both statutes prohibit discrimination against disabled persons; however, the ADA applies only to public entities while the RA applies to any federally funded programs or activities, whether public or private." *Borum v. Swisher Cnty.*, No. 2:14-CV-127-J, 2015 WL 327508, at *3 (N.D. Tex. Jan. 26, 2015) (citing *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010)).  Courts generally utilize the same standards in analyzing claims under both the ADA and RA.  *See Frame v. City of Arlington*, 657 F.3d 215, 223-24 (5th Cir. 2011).

Plaintiff's submissions cite both Title II and Title III of the ADA as bases for relief.  *See* Doc. No. 1-1, p. 8 (citing, among other authorities, 42 U.S.C. §§ 12131-12134 and 42 U.S.C. §§ 12182-12183).  Review of the substance of Plaintiff's contentions reveals that Plaintiff is suing under Title II of the ADA (which applies only to public entities) rather than Title III (which applies only to private entities).  Liberally construed, Plaintiff's contention is that DRTx is a "public entity" – he claims that DRTx is "an agency and instrument of Texas" and that it "is under the authority of [Governor Abbott] of the State of Texas and he has established the P&A in Austin TX."  (Doc. No. 1-1, pp. 1-2.)  Plaintiff discusses his ADA and RA claim only with reference to the provisions applicable to public entities.  (Doc. No. 1-1, pp. 4-5.)  He also states that he sues the DRTx Defendants in their "official capacities," a descriptor inapplicable to private entities.  *See* Doc. No. 17, pp. 8, 9.  Apart from the statutory citation to Title III, Plaintiff makes no other reference in his submissions to any provision applicable to private entities, and he does not allege anywhere that DRTx is a private entity.

14 / 25

DRTx has been observed by one court to be a "federally-authorized, state-established institution that, broadly speaking, works to protect and advocate for people with disabilities." *Disability Rights Texas v. Pacillas*, No. EP-21-CV-00211, __ F. Supp. 3d __, 2023 WL 5674130, at *2 (W.D. Tex. Sept. 1, 2023). The federal authorization referenced by the *Pacillas* court is found in the PAIR Act at 42 U.S.C. § 15043. For purposes of screening only, and consistent with Plaintiff's allegations, the undersigned assumes without deciding that DRTx is a "public entity" subject to Title II of the ADA, but not Title III, which applies only to private entities and individuals. *Cf. Bell-Kachelski v. Michigan Protection & Advocacy Serv., Inc.*, No. 16-14157, 2017 WL 5564591, at *10 n.5 (E.D. Mich. Nov. 20, 2017) (expressing reluctance to find P&A organization not a public entity or otherwise an instrumentality of the state and thus not subject to ADA Title II, because the organization received 92 percent of its funding from federal appropriations and grants). To the extent that Plaintiff cites Title III as a basis for relief, then, that claim should be dismissed.

To establish a valid claim under Title II of the ADA or the RA, a plaintiff must show that (1) he is a qualified individual within the meaning of the ADA; (2) he is being excluded from participation in, or being denied the benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination is by reason of his disability. *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671-72 (5th Cir. 2004). A qualifying disability is a "physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(a)(1). To "prevail on a Rehabilitation Act claim, the plaintiff must ultimately prove that the defendant discriminated against him or her *solely* on the basis of disability." *Taylor v. City of Shreveport*, 798 F.3d 276, 284 (5th Cir. 2015) (emphasis in original).

The definition of "disability" is to be given broad construction. *See* 42 U.S.C. § 12102(4)(A). For purposes of screening, Plaintiff sufficiently alleges that he has a "disability." This is "not a demanding question," as the ADA's definition of the term is to be considered broadly. *See Epley v. Gonzalez*, 860 F. App'x 310, 312-13 (5th Cir. 2021) (citing 42 U.S.C. § 12104(4)(A)). A qualifying disability is either a physical or mental impairment that substantially limits one or more of the major life activities of the individual, a record of such an impairment, or being regarded as having such an impairment. *See* 42 U.S.C. § 12102(2). Plaintiff alleges that his ulnar nerve damage in his arms and hands substantially limit the major life activities of "working, lifting, safety and climbing." (Doc. No. 17, p. 2.)

Plaintiff must also plausibly allege, however, that he was discriminated against in some fashion by reason of his disability. *See Cadena v. El Paso Cnty.*, 946 F.3d 717, 723-24 (5th Cir. 2020). "This prong can be satisfied with evidence that the defendant failed to make reasonable accommodations for a plaintiff's disability. [citation omitted] To establish a claim for failure to provide a reasonable accommodation, 'a plaintiff must show that the entity knew of the disability and its consequential limitations, either because the plaintiff requested an accommodation or because the nature of the limitation was open and obvious.'" *Epley*, 860 F. App'x at 314 (quoting *Cadena*, 946 F.3d at 724.) "Mere knowledge of the disability is not enough; the service provider must also have understood the limitations the plaintiff experienced . . . *as a result* of that disability." *Windham*, 875 F.3d at 236 (citations and quotation marks omitted, emphasis in original). Otherwise, it would be impossible for the provider to ascertain whether an accommodation is needed at all, much less identify an accommodation that would be reasonable under the circumstances. *Id.* (citing *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 164 (5th Cir. 1996)).

The burden is on the plaintiff to "'specifically identify the disability and resulting limitations'" to the service provider. *Windham*, 875 F.3d at 237 (quoting *Taylor*, 93 F.3d at 165). This is because the ADA "does not require clairvoyance." *Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 934 (7th Cir. 1995). "[K]nowledge of a disability is different from knowledge of the resulting limitation. And it certainly is different from knowledge of the necessary accommodation." *Windham*, 875 F.3d at 238. The burden is also on the plaintiff to request an accommodation in direct and specific terms. *Id.* at 237. This requirement of a direct request is the generally applicable rule: if a plaintiff fails to request an accommodation, the public entity cannot be held liable for failing to provide one. *Id.* at 239 (citing *Taylor*, 93 F.3d at 165). If Plaintiff did not make a request for accommodation of his disability in direct and specific terms, he can prevail on an ADA or RA claim only by satisfying a "narrow exception" – that is, by showing that the disability, the resulting limitation, and the necessary reasonable accommodation all were "open, obvious, and apparent" to the public entity's relevant agents. *Id.* at 239; *Valentine v. Collier*, 993 F.3d 270, 290 (5th Cir. 2021).

Finally, a plaintiff's requested accommodation must be "reasonable" in order to be actionable under ADA Title II or the RA if denied by the public entity. This means that the accommodation must not impose undue financial or administrative burdens or "fundamentally alter the nature of the service, program, or activity. *See Cadena*, 946 F.3d at 724 (citing 28 C.F.R. § 35.130(b)(7)).

Recall that Plaintiff's lawsuit here does not challenge any alleged discrimination or treatment that Plaintiff may have suffered during his incarceration in TDCJ: he does not seek to hold Governor Abbott or the DRTx Defendants liable for his alleged prison conditions or treatment, or for any disability discrimination at the hands of prison officials. Indeed, he is suing

17 / 25

TDCJ officials separately for that alleged treatment.[9]  Here, rather, Plaintiff is suing Governor Abbott and the DRTx Defendants under the ADA and RA only for not providing him with assistance or representation to challenge such alleged TDCJ conditions and treatment.  The investigative assistance or legal representation itself is the service, program, or activity that Plaintiff claims to have been excluded from and, liberally construed, is also the "reasonable accommodation" that Plaintiff claims he was improperly denied.

Plaintiff's ADA and RA claims fail to state a viable claim for relief, for multiple reasons. First, Plaintiff fails to allege how his alleged ulnar nerve disability has actually limited or impaired his ability to avail himself of any DRTx program, service, or activity.  Plaintiff has not alleged that he has an "unequal ability to use and enjoy the facility" – that is, DRTx programs, services, or activities – "compared to individuals who do not have a disability."  *Providence Behavioral Health v. Grant Rd. Pub. Util. Dist.*, 902 F.3d 448, 459 (5th Cir. 2018).  The ADA "is not violated where the denial of an accommodation d[oes] not create a situation where disabled individuals ha[ve] an unequal ability to use and enjoy the facility …."  *See Hale v. Harrison Cnty. Bd. of Supervisors*, 8 F.4th 399, 404 n.1 (5th Cir. 2021) (quoting *Providence Behavioral Health*, 902 F.3d at 459).  When asked to specify how he was being treated differently from others who do not have a disability (and to give specific examples),[10] Plaintiff responded merely that he was "not able to participate in services/programs whether DRTx or TDCJ."  (Doc. No. 17, p. 3.)  Plaintiff did state that he was in segregation and was being treated differently because of his disabilities by TDCJ, *see id.*, but he makes no claim of any such

---

[9]  *See*, *e.g.*, Amended Complaint, *Schorsch v. Miller*, No. 2:19-cv-00323 (S.D. Tex.), Doc. No. 19-1 (May 4, 2020).

[10]  Doc. No. 14, p. 3.

treatment by the defendants in this case – the DRTx Defendants and Governor Abbott.  Plaintiff

is litigating his disability-related claims against TDCJ in another lawsuit, but this case is about

whether Plaintiff was unable to avail himself of DRTx's services, not TDCJ's.  Because Plaintiff

fails to allege that he has an unequal ability to use DRTx's services compared to individuals who

do not have a disability, Plaintiff's ADA and RA claims are subject to dismissal.

      Additionally, Plaintiff's ADA and RA claims are not viable because he does not contend

that the DRTx Defendants and Governor Abbott actually knew of Plaintiff's ulnar nerve

disability or of any resulting limitation on Plaintiff's ability to avail himself of DRTx's

programs, services, or activities, or that he asked DRTx to provide investigation or representation

as a "reasonable accommodation" for that ulnar nerve disability.[11]  Even if the Court were to

stretch Plaintiff's vaguely worded allegations to encompass an assertion that the DRTx

Defendants and Governor Abbott had actual knowledge of Plaintiff's ulnar nerve disability, any

resulting limitation on Plaintiff's ability to avail himself of DRTx's programs, services, or

activities because of that disability is certainly not apparent, and Plaintiff does not contend

otherwise.  Rather, Plaintiff claims simply that his ulnar nerve disability qualified him for

DRTx's services, not that his disability impaired or prevented him from accessing those services.

"Mere knowledge of the disability is not enough; the service provider must also have understood

the limitations the plaintiff experienced . . . *as a result* of that disability."  *Windham*, 875 F.3d at

236 (citations and quotation marks omitted, emphasis in original).  Plaintiff also does not

contend that his disability, the resulting limitation, and the allegedly necessary reasonable

---

[11]  Plaintiff does not offer any theory (other than failure to provide a reasonable accommodation) by which the
DRTx Defendants or Governor Abbott could be found to have discriminated against Plaintiff by reason of his ulnar
nerve disability.

accommodation were so "open, obvious, and apparent" as to make it plain for DRTx to know that it needed to provide Plaintiff with investigative assistance or legal representation as a means of accommodating Plaintiff's ulnar nerve disability.  *Cf. Valentine*, 993 F.3d at 290.

Even if Plaintiff had hypothetically asked DRTx for a specific "accommodation" in the form of investigative assistance or legal representation (a term he does not claim to have used), he still does not offer any causal connection explaining how that requested assistance or representation – itself – could reasonably enable Plaintiff to engage in the cited major life activities ("working, lifting, safety and climbing") that are allegedly impaired by Plaintiff's ulnar nerve disability.  Plaintiff's requested accommodation would (at most) have facilitated his ability to litigate – it would not have affected his ability to engage in the major life activities allegedly impaired by his ulnar nerve disability.  *Cf. Wood v. Crown Redi-Mix, Inc.*, 339 F.3d 682, 687 (8th Cir. 2003) (in Title I ADA case: "Where the reasonable accommodation requested is unrelated to the physical or mental limitation, we do not believe an ADA action may lie.  Put another way, there must be a causal connection between the major life activity that is limited and the accommodation sought.").[12]

Plaintiff's ADA and RA claims fail to plausibly allege an unequal ability to utilize DRTx's services because of his ulnar nerve disability, fail to plausibly allege that the defendants knew of his ulnar nerve disability or its resulting limitations, and fail to plausibly allege any

---

[12] It is unclear whether participating in litigation can be considered a "major life activity."  Even assuming it could, Plaintiff still fails to plausibly allege how DRTx's alleged denial of services impaired his ability to litigate compared to others who do not have a disability.  Plaintiff states that he filed his disability lawsuit against TDCJ officials even without DRTx's assistance.  *Cf. Greene v. Carr*, No. 20-cv-119, at *3-*4 (W.D. Wisc. June 28, 2021) (even if allegations implicated a major life activity, plaintiff failed to allege that symptoms created a barrier to drafting and filing legal documents, or even severely restricted his ability to do so).  The undersigned also observes that Plaintiff has filed at least two other lawsuits in this district during his current TDCJ incarceration without apparent representation or other assistance by DRTx.  *See Schorsch v. Tex. Dept. of Crim. Justice*, No. 2:20-cv-00204 (S.D. Tex.); *Schorsch v. Castrol*, No. 2:21-cv-00109 (S.D. Tex.).

causal connection between the impaired major life activities and the accommodation sought. Plaintiff's claims should therefore be dismissed as frivolous and for failure to state a claim upon which relief may be granted.

Should the district court disagree with the undersigned's treatment of DRTx as a public entity, the undersigned concludes that the same result would obtain if DRTx were treated as a private entity. Although the Fifth Circuit does not appear to have specifically outlined the elements of a Title III ADA claim, another district court in this circuit has applied a four-prong test used in another circuit, a test which focuses on discrimination based on disability by failing to make a needed modification that is necessary to accommodate the plaintiff's disability. *See Hernandez v. Roche*, No. EP-20-CV-00263, 2022 WL 4072963, at *3 (W.D. Tex. Sept. 2, 2022), *aff'd*, No. 22-50927, 2023 WL 2645548 (5th Cir. Mar. 27, 2023) (summary calendar) (citing *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1082 (9th Cir. 2004)). To survive screening under that four-prong test, a plaintiff must plausibly allege that (1) he is disabled as defined by the ADA, (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation, (3) the defendant employed a discriminatory policy or practice, and (4) the defendant discriminated against the plaintiff based upon the plaintiff's disability by failing to make a requested reasonable modification that was necessary to accommodate the plaintiff's disability. *See Fortyune*, 364 F.3d at 1082 (citing *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 683 n.38 (2001)). Plaintiff's ADA claim would also fail under this Title III test, because he fails to plausibly allege that any "modification" made by DRTx was necessary to accommodate Plaintiff's ulnar nerve disability. Accordingly, dismissal is equally appropriate if DRTx is treated as a private entity and Plaintiff's claim analyzed under Title III.

### 3. *Plaintiff's conspiracy claims are frivolous.*

Plaintiff also fails to plausibly allege a conspiracy by Governor Abbott and the DRTx Defendants to violate his rights.  Absent from Plaintiff's complaint (and from his questionnaire response) is any sufficiently pled agreement by the defendants to violate his constitutional rights.  When directed to state his specific evidence of an agreement among the defendants (Doc. No. 14, p. 5), Plaintiff responded merely: "Courts have well established that one can be a party to a conspiracy even though he does not know of the existence or identify of all his co-conspirators, and even though he does not participate in all of their official acts.  …  The direct evidence is the previous lawsuit No. 2:19-CV-323 – because Defendants, collectively, excluded me from participating."  (Doc. No. 17, p. 7.)  Plaintiff's response is essentially a *res ipsa loquitur* argument: that the defendants must have entered into an agreement to violate his rights, because he was (allegedly) "excluded" from participating in his own federal lawsuit.  Plaintiff offers no facts indicating any agreement among the Defendants, and his alleged "exclusion" from participating in his federal lawsuit (itself a dubious assertion) does not itself sufficiently suggest any agreement by the defendants to violate Plaintiff's rights.  *Cf. Terwilliger v. Reyna*, 4 F.4th 270, 285 (5th Cir. 2021) (quoting *Twombly*, 550 U.S. at 557: "A conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality.").

Plaintiff additionally cites 42 U.S.C. §§ 1981(b) and 1985(3) as bases for relief.  Those claims, even liberally construed, are also subject to dismissal.  Plaintiff fails to allege, much less plausibly allege, that he is a member of a racial minority, that any of the defendants had intent to discriminate him on the basis of race, or that anyone prevented him from making or enforcing any contract.  Thus, his § 1981 claim should be dismissed.  *See Arguello v. Conoco, Inc.*, 330 F.3d 355, 358 (5th Cir. 2003).  Likewise, because Plaintiff has failed to plausibly allege any

conspiracy by the defendants or that any conspiracy was based on their animus against any protected class, he cannot prevail on any claim under § 1985(3). *See Texas Democratic Party v. Abbott*, 961 F.3d 389, 410 (5th Cir. 2020).

Plaintiff's conspiracy claims, unsupported in either law or fact, should be dismissed as frivolous.

### E. Leave to amend should be denied.

The undersigned is recommending dismissal of Plaintiff's claims. "When the dismissal of a *pro se* complaint is appropriate, it should generally be done without prejudice in order to allow the plaintiff an opportunity to file an amended complaint." *Rodriguez v. United States*, 66 F.3d 95, 97 (5th Cir. 1995). But leave to amend need not be granted if amendment would be futile – for example, if an amended complaint would still fail to state a claim upon which relief may be granted. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (futility of amendment is adequate justification to refuse to grant leave to amend).

"If the prisoner has filed his complaint and submitted questionnaire responses, then the court may conclude that he has pleaded his best case such that granting him further leave to amend would be futile or cause unnecessary delay." *Clark v. Waddell*, No. 7:22-cv-00059-M-BP, 2023 WL 8605313, at *18 (N.D. Tex. Nov. 15, 2023) (citing *Witherspoon v. Waybourn*, No. 4:20-cv-1150-P, 2021 WL 2635917, at *10 (N.D. Tex. June 25, 2021) and *McLean v. King*, No. 3:20-cv-1244-C-BK, 2020 WL 6049297, at *2 (N.D. Tex. Sept. 15, 2020)); *see also Mejia v. Monroe*, No. H-18-3036, 2021 WL 765726, at *2 (S.D. Tex. Feb. 26, 2021) (Miller, J.) (finding that inmate had pleaded his best case where he was afforded an opportunity to plead facts supporting his claim through a more definite statement). Here, Plaintiff has had the opportunity to plead his best case against Defendants, including through his responses to the Court's

questionnaire, but none of his claims are viable.  The undersigned therefore recommends dismissal without leave to amend.

### F.  Assessment of "strike."

The undersigned is recommending dismissal of Plaintiff's *in forma pauperis* lawsuit as frivolous and for failure to state a claim upon which relief may be granted.  The dismissal of Plaintiff's § 1983 case on those grounds should trigger the imposition of a "strike" pursuant to 28 U.S.C. § 1915(g).  Should Plaintiff accumulate three such "strikes," he will no longer be permitted to bring any action in forma pauperis unless he is under imminent danger of serious physical injury.

### G.  Conclusion and recommendation.

The district court should DISMISS Plaintiff's § 1983 suit as frivolous and for failure to state a claim upon which relief may be granted.  Leave to amend should be denied.  The district court should impose a "strike" against Plaintiff for purposes of 28 U.S.C. § 1915(g), and should instruct the Clerk of Court to send notice of this dismissal to the Manager of the Three Strikes List for the Southern District of Texas at Three_Strikes@txs.uscourts.gov.

### H.  Notice.

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within 14 days after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), and General Order No. 2002-13, United States District Court for the Southern District of Texas.

A failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 14 days after being

served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

      SIGNED on January 9, 2024.

                                    _____

                                         MITCHEL NEUROCK
                                 United States Magistrate Judge